This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40382**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TRAVIS JAMES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases Involving the Law Offices of the Public Defender, From the Twelfth Judicial District Court in *In re Pilot Project for Criminal Appeals*, No. 2021-002, effective September 1, 2021. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing.

Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**{2}** Defendant appeals from the district court's judgment and sentence, convicting him of aggravated fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003, amended 2022).[1] [RP 193-99] On appeal, Defendant contends that there was insufficient evidence to support the conviction because the State failed to prove that the deputy's vehicle was an "appropriately marked law enforcement vehicle." [BIC 6] *See* § 30-22-1.1(A); UJI 14-2217 NMRA (providing the elements to prove aggravated fleeing a law enforcement officer).

**{3}** "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (alteration, internal quotation marks, and citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (alterations, internal quotation marks, and citation omitted). "We examine each essential element of the crimes charged and the evidence at trial to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[A]ppellate courts do not search for inferences supporting a contrary verdict or re[]weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Id.* (internal quotation marks and citation omitted).

**{4}** In the present case, the State presented evidence that Defendant was speeding around a neighborhood in an erratic and dangerous manner. [BIC 1-2; AB 1-2] Local residents called the police. [BIC 2] Deputy Swanson, with the Otero County Sheriff's Department, responded to the calls. [BIC 3] Upon arriving at the scene, Deputy Swanson observed a blue Chevy Monte Carlo in the middle of the road at which point he activated his lights, and as the vehicle began to speed away, he also turned on the siren and followed the car. [BIC 3] Deputy Garza also responded to the call, and after arriving at the scene, assisted Deputy Swanson in pursuing and arresting Defendant. [BIC 3] The ensuing chase lasted for approximately fifteen minutes. [BIC 3] Defendant was arrested for fleeing a law enforcement officer and driving while intoxicated.

**{5}** Two recordings from the dashcam in Deputy Swanson's vehicle were admitted into evidence. The first showed three people gesturing and pointing Deputy Swanson in the direction of Defendant's car parked in the middle of the road after he arrived at the scene. [AB 4] The chase that ensued was captured on the first video during which time "a brief siren can be heard." [AB 4] The second recording showed Defendant as he was seated in the back of the vehicle, which included a "cage" over the rear window area. [AB 6]

---

1All references to Section 30-22-1.1 in this opinion are to the 2003 version of the statute, which is the version applicable to Defendant's conviction.

**{6}** A recording from the dashcam in Deputy Garza's vehicle was also admitted and showed that Deputy Garza had joined the pursuit and the flashing emergency lights mounted on the roof of Deputy Swanson's vehicle could be seen along with the flashing taillights. [AB 7] When Deputy Swanson's vehicle stopped, a patrol vehicle number decal—number 47—was visible. [AB 8] Finally, a "horizontal darkened area could be seen along the exterior of the left side doors of Deputy Swanson's patrol vehicle." [AB 9] Neither the State nor Defendant dispute that the image is blurry; however, both parties note that there is some sort of marking on the vehicle. [BIC 4, 7; AB 9] Defendant argues that the marking is a stripe, while the State argues that it is lettering. [BIC 4; AB 8-9]

**{7}** Defendant asserts that the State did not admit any evidence and did not elicit any testimony from either deputy to demonstrate that Deputy Swanson was in an "appropriately marked law enforcement vehicle" at the time the chase and Defendant's subsequent arrest occurred. [BIC 7] *See* UJI-14-2217 NMRA. Defendant contends that at trial the State "failed to ask the deputies whether they were in uniform or in marked cars[,]" a fact the State does not dispute. [BIC 4; AB 10] Defendant moved for a directed verdict based on his argument that there was no testimony regarding whether the deputies were in "appropriately marked law enforcement vehicles," which the district court denied, stating that the admitted videos "do show the vehicles and markings . . . sufficient[ly]." [BIC 4; AB 15]

**{8}** On appeal, Defendant urges us to conclude that this case is similar to *State v. Montano*, 2020-NMSC-009, 468 P.3d 838. In *Montano*, our Supreme Court discussed what constitutes an "appropriately marked law enforcement vehicle." The Court considered whether unmarked cars, which were intended to avoid detection, and which had no markings or insignias of any kind, but did have lights mounted in the front grill, top rear window, and brake lights, and a siren were "appropriately marked law enforcement vehicles." *Id.* ¶¶ 5, 10, 39. The Court explained that an "appropriately marked law enforcement vehicle" means "a police vehicle bearing decals or other prominent and visible insignia identifying it as such." *Id.* ¶ 56. The Court concluded that the lights and sirens alone, as present on the otherwise undercover cars in *Montano*, were "insufficient to constitute appropriate markings indicating to the public that the vehicle was in fact a law enforcement vehicle." *Id.* ¶ 66.

**{9}** The undisputed facts of the instant case are distinguishable from *Montano*. Although the State did not elicit direct testimony from either deputy about whether the vehicle was an "appropriately marked law enforcement vehicle," the State argues that there was sufficient circumstantial evidence to support an inference that it was an appropriately marked vehicle. [AB 23-27] Specifically, the State maintains that the jury could infer that the vehicle was appropriately marked because Deputy Swanson referred to his "patrol vehicle" during his testimony; his patrol vehicle had emergency lights that were prominently mounted on the roof; the vehicle had a siren and front bumper push bars; and a decal number of the patrol vehicle. [AB 22, 26] The State also maintains that as Deputy Swanson arrived on the scene three people "recognized [his] patrol vehicle as an appropriately marked law enforcement vehicle" and pointed him

toward Defendant's location. [AB 25] Finally, the State contends that the jury could reasonably infer, based on the totality of the circumstances, that the darkened horizontal area on the left side doors was lettering identifying the vehicle as law enforcement. [AB 23] Unlike *Montano*, there is no evidence in the record indicating that Deputy Swanson's vehicle was unmarked so as to evade detection. The testimony and recordings from the dashcams provide sufficient evidence that the jury could reasonably infer that Deputy Swanson was in an "appropriately marked law enforcement vehicle." *See Slade*, 2014-NMCA-088, ¶ 13; *see also State v. McGhee*, 1985-NMSC-047, ¶ 17, 103 N.M. 100, 703 P.2d 877 ("The determination of the weight and effect of the evidence, including all reasonable inferences to be drawn from both the direct and circumstantial evidence is a matter reserved for determination by the trier of fact.").

**{10}**     To the extent that Defendant argues that the jury cannot make an inference regarding an appropriately marked law enforcement vehicle [RB 3-5], we are unpersuaded. As this Court has explained, "an inference must be linked to a fact in evidence." *Slade*, 2014-NMCA-088, ¶ 14. Here, given the circumstantial evidence presented during trial regarding Deputy Swanson's vehicle, including its physical characteristics, his reference to it as his "patrol vehicle," the marking on the exterior doors, and the people at the scene appearing to recognize it as a law enforcement vehicle, the jury could readily have determined that Deputy Swanson was in an "appropriately marked law enforcement vehicle." *See id.* ("A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." (alterations, internal quotation marks, and citation omitted)); *State v. Phillips*, 2000-NMCA-028, ¶ 14, 128 N.M. 777, 999 P.2d 421 (observing that juries may "use their common sense to look through testimony and draw inferences from all the surrounding circumstances" (internal quotation marks and citation omitted)).

**{11}**     For the foregoing reasons, we affirm Defendant's conviction.

**{12}   IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**